# EXHIBIT C

**SMITH EIBELER, LLC**
**Meghan Chrisner-Keefe, Esq. #21052011**
**Christopher J. Eibeler, Esq. ID# 031772004**
**David J. Franzmathes, Esq. #309432019**
**101 Crawfords Corner Road, Suite 1-126**
**Holmdel, New Jersey 07733**
**732-444-1300**
**Attorneys for Plaintiff**

-------------------------------------------------------------------X
                                           :     **SUPERIOR COURT OF NEW JERSEY**

**ELISE LAWLESS,**                     :     **LAW DIVISION:  MONMOUTH COUNTY**

                                      :     **DOCKET NO.:**

                **Plaintiff,**          :

                                      :

**v.**                                     :

                                    :

**HASHOFF, LLC, TRINET HR III, INC.,**   :     **COMPLAINT AND JURY DEMAND**
**PHIL FRANK, ABC COMPANIES (1-10)**   :
**(fictitious names of unknown entities) and**   :
**JOHN/JANE DOES (1-10)(fictitious names of**   :
**unknown persons),**                        :

                                    :

                **Defendants.**      :

                                    :
-------------------------------------------------------------------X

Plaintiff, Elise Lawless, (hereinafter referred to as "Plaintiff"), by way of Complaint against

Defendants Hashoff, LLC, TriNet HR III, Inc., Phil Frank and ABC Companies (1-10)(fictitious names

of unknown entities) and JOHN/JANE DOES (1-10)(Fictitious names of unknown persons)

(hereinafter collectively referred to as "Defendants") say as follows:

<u>**FACTS COMMON TO ALL COUNTS**</u>

1.     Plaintiff Elise Lawless ("Plaintiff") is an individual residing at 654 River Road, Fair

Haven, New Jersey 07704.

2.     Defendant Hashoff, LLC ("Hashoff") is a limited liability company organized and

existing under the laws of the State of New York with a principal place of business at 228 Park

Avenue, New York, New York 10003-1502. Hashoff is a social influencer marketing company that generates instant, contextual audiences via social media. Defendant Hashoff is responsible as an employer, joint employer, alter ego, integrated employer and/or aider and/or abettor for the claims set forth herein.

3.      Defendant TriNet HR III, Inc., ("TriNet") is a for profit corporation organized and existing under the laws of the State of California with a principal place of business located at 1 Park Place, Suite 600, Dublin, California, 94568. TriNet provides Human Resources payroll, benefits and compliance services. Defendant TriNet is responsible as an employer, joint employer, alter ego, integrated employer and/or aider and/or abettor for the claims set forth herein.

4.      Plaintiff's 2021 form W-2 lists TriNet as her employer in box c.

5.      Defendants Hashoff and TriNet shall collectively be referred to as "the Company" or "Defendant Company".

6.      Defendants ABC Companies (1-10) are fictitious sole proprietorships, companies, limited liability companies, partnerships, and/or other companies/entities which are not specifically named Defendants, who are unknown to Plaintiff at this time but which may be identified during discovery in this matter, and which are responsible to Plaintiff for the claims set forth herein and/or which companies are responsible to Plaintiff for claims set forth herein and/or which companies are responsible to Plaintiff as an employer, joint employer, integrated employer and/or an aider and/or abettor for claims set forth herein.

7.      Defendants John/Jane Does (1-10) are fictitious persons who are not specifically named Defendants, who are unknown to Plaintiff at this time, but who may be identified during discovery in this matter and who are responsible to Plaintiff for the claims set forth herein.

8.      Charlie Thomas was the Managing Director of Hashoff and Plaintiff's supervisor throughout Plaintiff's employment up until his departure from the Company in or about December 2021.

9.      Thereafter, Defendant Phil Frank was the Managing Director of Hashoff and Plaintiff's supervisor from Mr. Thomas' separation until her termination in March 2022.

10.     On or about April 12, 2021, Plaintiff was offered employment with the Company in the position of Sales Director.

11.     The Company's offer to Plaintiff included an explanation of Plaintiff's wages.

12.     More specifically, the wages offered to Plaintiff were composed of a base salary, commissions and benefits.

13.     The commission portion of Plaintiff's wages are expressed as:

> Your additional commission-based compensation ("Commission") will be based upon an annual revenue target as discussed with the Company. Commissions will be calculated based upon the Company's Commission plan in effect each year. Your Commission rate, annual quota and other elements of your Commission plan are subject to change at the sole discretion of the Company. In order to be entitled to payment of any Commission, you must be employed at the Company at the time the Commission becomes due, as determined at the sole discretion of the Company.

14.     Plaintiff accepted the Company's offer of employment.

15.     Plaintiff began her employment with the Company on or about April 14, 2021.

16.     At the commencement of Plaintiff's employment, she was specifically assigned the DraftKings and the Beam Suntory accounts (hereinafter "Assigned Accounts").

17.     While DraftKings and Beam Suntory had previously engaged in business with the Company, upon their assignment to Plaintiff, she was responsible for initiating and securing any and all new business on her Assigned Accounts.

18.     Plaintiff was entitled to earn commissions on any newly initiated and secured business with the DraftKings and Beam Suntory accounts.

19.     Throughout 2021, Plaintiff worked diligently to secure new business on her Assigned Accounts for the Company.

20.     Throughout 2021, Plaintiff secured new business on her Assigned Accounts.

21.     Plaintiff was further tasked with establishing new business accounts.

22.     In or about September 2021, Plaintiff secured new business with Anker.

23.     Anker was a new account for the Company.

24.     Further, in or about July 2021, Plaintiff secured new business with Dunkin', through the advertising agency BBDO.

25.     While Dunkin' and the Company had prior business dealings, Plaintiff re-engaged Dunkin' and re-established the Dunkin' account for the Company.

26.     Plaintiff's work resulted in her achieving numerous successful deals in 2021 on her Assigned Accounts, Anker and Dunkin'.

27.     On or about November 8, 2021, Mr. Thomas sent Plaintiff an email entitled "2021 Commission", which read as follows, in relevant part:

> Hi Elise – Down below is the 2021 commission plan. It was drawn up by Phil Frank and approved by Joel Wright and Mike Racic. I inherited it when I took over in

April. It's a huge oversight that I'm just sending it to you now…I apologize for that.

Base commission: 4% of gross

Margin Accelerator
Under 30% margin: no commission
30%-39% margin: 4% commission (base)
40%+ margin: 5% commission

Achievement to Goal incentives:
0-50% achievement to revenue goal: no commission
51-100% achievement to revenue goal: 4% commission (base)
101%+ achievement to revenue goal: 6% commission

Notes:
No commission on any order under $50,000
No commission on SaaS license fees

Each seller has quarterly and annual goals.

The foregoing shall be hereinafter referred to as the "Commission Plan".

28.     Plaintiff had secured sufficient business in 2021 to meet the goals of the Commission Plan established by the Company.

29.     Because Plaintiff had secured new business on her Assigned Accounts, as well as initiated business with the new accounts Anker and Dunkin', Plaintiff was entitled to the commissions earned on the business she secured on behalf of the Company.

30.     Accordingly, for 2021 and thereafter, Plaintiff was entitled to commissions earned on accounts with DraftKings, Beam Suntory, Anker and Dunkin.

31.     Based upon the Commission Plan established for Plaintiff, on or about December 8, 2021, Plaintiff shared her commission calculations via email with Mr. Thomas.

32.     Plaintiff had calculated that her commissions owed for calendar year 2021 were $23,724.

33.     In response to Plaintiff's email, Mr. Thomas stated that he had shared Plaintiff's commission calculations with other principals of the Company and that he believed the Company will have commissions to pay in the first quarter.

34.     Mr. Thomas' email to Plaintiff further stated:

> You will be paid after the Company is paid, so that means getting paid on Anker, DraftKings, and BBDO. I think the expectation should be February/March. The other contingency has been having the fund raise complete but that will be done by early January and won't be an issue.

35.     Thereafter, Mr. Thomas confirmed to Plaintiff that her commission calculations were correct.

36.     In or about the first quarter of 2022, Plaintiff confirmed that her accounts on which she had earned commissions had paid their invoices to the Company.

37.     The Company did not issue Plaintiff a new Commission Plan for 2022.

38.     Throughout the first quarter of 2022, Plaintiff secured sales on behalf of the Company for calendar year 2022 that qualified her for commissions based upon the Commission Plan.

39.     On or about March 22, 2022, Plaintiff emailed the Company to inquire about the payment of her 2021 commissions and whether they would be paid on the upcoming pay cycle scheduled for March 31, 2022.

40.     In response, Defendant Frank responded:

> Can't confirm at the moment, but will get back to you with timing asap.

41.     On or about Friday, March 25, 2022, Plaintiff sent a follow-up email again seeking confirmation that the commissions owed to her would be paid on March 31.

42.     Later that day, Defendant Frank responded to Plaintiff's email as follows, in

relevant part:

> Regarding commission owed from 2021, please see the following:
>
> DraftKings has been determined to be a house account. This decision is retroactive to 2021.

43.     In his email, Defendant Frank further falsely alleged, and for the first time, that Plaintiff did not meet her 2021 revenue generation goal.

44.     Plaintiff responded shortly thereafter.

45.     In her response, Plaintiff further complained and objected to the Company's refusal to pay the commissions she had earned and were owed by the Company.

46.     Plaintiff further complained and objected that she had achieved the goals set forth in the Commission Plan and the Company owed her wages.

47.     Plaintiff further complained and objected to the Company that it had already acknowledged that she was entitled to the commissions.

48.     Plaintiff further complained and objected to the Company's after-the-fact retroactive designation of the DraftKings account as a "house account" after she had already completed the sales for which commissions were due and DraftKings had paid its invoices.

49.     In retaliation to Plaintiff's complaints and objections, on or about March 28, 2022, the Company terminated Plaintiff's employment.

50.     For the first time since Plaintiff began her employment, Defendants alleged Plaintiff had performance deficiencies.

51.     During the termination meeting, Defendant Frank specifically informed Plaintiff that if she wanted to be paid on her commissions, she would need to pursue the Company.

52.     Plaintiff was terminated just prior to when the Company had acknowledged it

would pay the commissions due to Plaintiff.

53.    Prior to her termination, throughout 2022 Plaintiff earned commissions that, pursuant to the Commission Plan, amount to $26,480 in wages.

54.    To date, Plaintiff has not been paid wages concerning her 2021 earned commissions.

55.    To date, Plaintiff has not been paid wages concerning her 2022 earned commissions.

56.    Plaintiff's termination of employment was in retaliation for her protected complaints as set forth herein.

57.    As a result of the foregoing, Plaintiff has suffered damages.

## FIRST COUNT

## VIOLATION OF THE CONSCIENTIOUS EMPLOYEE PROTECTION ACT ("CEPA")
## N.J.S.A. 34:19–1, et seq.

58.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

59.    During all times relevant to this cause of action, Plaintiff was an "employee" of Defendant Company as that term is defined by CEPA, N.J.S.A. 34:19-2(b), and case law.

60.    During all times relevant to this cause of action, Defendant Company was Plaintiff's "employer" as that term is defined by CEPA, N.J.S.A. 34:19-2(a), and case law.

61.    During all times relevant to this cause of action, Defendants Hashoff and TriNet are employers, joint employers, integrated employers and/or aiders and/or abettors for claims set forth herein under CEPA.

62.    During all times relevant to this cause of action, Defendant Frank was Plaintiff's

8

"employer" and/or "supervisor" as that term is defined by CEPA, N.J.S.A. 34:19-2(a) and (d), and case law.

63.    Upon information and belief, Defendant(s) John/Jane Does (1-10) are individuals who during times relevant to this cause of action, were Plaintiff's "employers" and/or "supervisors" as CEPA, N.J.S.A. 34:19-2(a) and (d), and case law define those terms.

64.    Defendant Company refused to pay Plaintiff her earned commissions, to which Plaintiff complained and objected.

65.    Plaintiff reasonably believed that Defendants' conduct in refusing to pay Plaintiff her earned commissions constitutes unlawful conduct in violation of laws, rules and/or regulations and/or is fraudulent and/or is incompatible with a clear mandate of public policy.

66.    Plaintiff engaged in protected whistleblowing activities when she, on multiple occasions, complained about, disclosed, and/or objected to Defendants' refusal to pay her earned wages.

67.    Plaintiff further engaged in protected whistleblowing activities when she objected, refused to comply with and complained about the Company's after-the-fact designation of the DraftKings account as a "house account" which would retroactively change her 2021 and/or 2022 commission so the Company did not have to pay Plaintiff her wages and earned commissions, which she reasonably believed was in violation of laws, rules and/or regulations and/or is fraudulent and/or is incompatible with a clear mandate of public policy.

68.    Defendants' retaliation and adverse treatment of Plaintiff, including the termination of her employment, was wrongful and without cause or justification, and in retaliation for Plaintiff's actions, including her objections and complaints to Defendant Company.

69.     The retaliatory actions taken by Defendants against Plaintiff are in violation of CEPA, N.J.S.A. 34:19-1, et seq.

70.     Defendant Frank and John/Jane Does (1-10) engaged in, participated in, condoned, ratified, perpetuated the CEPA violations and/or were employers and/or supervisors under CEPA.

71.     Defendants' acts or omissions were the cause of Plaintiff's harm and Defendants' acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions such that punitive damages are appropriate.

72.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and has continued to suffer loss of earnings and other employment benefits, emotional distress, stress, humiliation, pain, damage to reputation, harm to her career development, and other damages recoverable under CEPA.

**WHEREFORE**, Plaintiff demands judgment against Defendants for harm suffered as a result of Defendants' violations of CEPA, N.J.S.A. 34:19–1 et seq., as follows:

A.      Back pay and benefits;

B.      Front pay and benefits;

C.      Compensatory damages;

D.      Consequential damages;

E.      Punitive damages;

F.      Equitable Relief;

G.      Pre-judgment interest and enhancements to off-set negative tax consequences;

H.      Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

I.      Declaring that Defendants have violated the CEPA and requiring Defendants to take appropriate corrective action to end unlawful retaliation in the workplace; and

J.      Such other relief as may be available pursuant to the CEPA and which the Court deems just and equitable.

**SECOND COUNT**

**THE NEW JERSEY WAGE PAYMENT LAW ("NJ WAGE PAYMENT LAW")**
**N.J.S.A. 34:11-4.1, et seq.**

73.     Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

74.     The NJ Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. requires that every employer pay the full amount of wages due to its employees.

75.     The Company is a covered "employer" within the meaning of the NJ Wage Payment Law.

76.     Plaintiff is a covered "employee" of the Company within the meaning of the NJ Wage Payment Law.

77.     The commissions earned by Plaintiff constitute wages within the meaning of the NJ Wage Payment Law.

78.     Despite their legal obligations under the NJ Wage Payment Law, Defendants failed to pay Plaintiff her earned commissions on a timely or complete basis.

79.     Defendants engaged in, participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJ Wage Payment Law violations.

80.     The Defendants' acts or omissions were the cause of Plaintiff's harm and the Defendants' acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

81.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered emotional distress, compensatory and other damages.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for harm suffered as a result of the violations of NJ Wage Payment Law, N.J.S.A. 34:11-4.1, et seq., as follows:

A.     Back pay and benefits;

B.     Front pay and benefits;

C.     Compensatory damages;

D.     Consequential damages;

E.     Treble damages;

F.     Liquidated damages;

G.     Punitive damages;

H.     Equitable Relief;

I.     Pre-judgment interest and enhancements to off-set negative tax consequences;

J.      Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

K.      Declaring that the Company has violated the NJ Wage Payment Law and requiring the Company to take appropriate corrective action to end unlawful retaliation in the workplace; and

L.      Such other relief as may be available pursuant to the NJ Wage Payment Law and which the Court deems just and equitable.

### THIRD COUNT

**THE NEW JERSEY WAGE PAYMENT LAW - RETALIATION**
**N.J.S.A. 34:11–4.1, <u>et seq.</u>**

82.      Plaintiff repeats and realleges each of the allegations of the within Complaint as if set forth at length herein.

83.      As set forth herein, Plaintiff engaged in protected activity under the NJ Wage Payment Law, by complaining and opposing the Company's refusal and failure to pay her the full wages due to Plaintiff.

84.      Plaintiff suffered adverse employment actions, including the termination of her employment, as a result of engaging in the protected activity under the NJ Wage Payment Law.

85.      Defendants' conduct is in violation of the NJ Wage Payment anti-retaliation provisions.

86.     Defendants' acts or omissions were the cause of Plaintiff's harm and Defendant's acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

87.     Defendants Frank and John/Jane Does engaged in, participated in ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the aforesaid violations of the NJ Wage Payment Law.

88.     As a result of Defendants' conduct, Plaintiff has suffered emotional distress, compensatory and other damages.

**WHEREFORE**, Plaintiff demands judgment against the Company for harm suffered due to the aforesaid NJ Wage Payment Law violations as follows:

A.     All wages lost resulting from the unlawful discharge and other discriminatory actions;

B.      Back pay and benefits;

C.     Front pay and benefits;

D.     Compensatory damages;

E.     Consequential damages;

F.     Imposing of appropriate fines as provided by the NJ Wage Payment Law;

G.     Liquidated damages equal to 200 percent of the amount of all wages lost resulting from the unlawful discharge and other discriminatory actions;

H.     Reinstatement;

I.     Punitive damages;

J.     Equitable Relief;

K.      Pre-judgment interest and enhancements to off-set negative tax consequences;

L.      Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

M.      Declaring that Defendants violated the NJ Wage Payment Law and requiring Defendants to take appropriate corrective action to end wage theft and unlawful retaliation in its workplace; and

N.      Such other relief as may be available pursuant to the NJ Wage Payment Law and which the Court deems just and equitable.

## FOURTH COUNT

### BREACH OF CONTRACT

89.      Plaintiff repeats and realleges each and every prior allegation of the Complaint as if set forth at length herein.

90.      Plaintiff accepted her employment and performed the duties and responsibilities of her position in exchange for Defendants' promise to pay her in accordance with the terms and conditions of her agreed upon wages.

91.      By and through the parties' agreement, Defendants had a legal responsibility to fully perform its obligations to fully compensate Plaintiff for her earned commissions.

92.     As set forth herein, Defendants unilaterally and retroactively implemented new terms to avoid having to pay Plaintiff her earned commissions.

93.     Plaintiff requested that the Company pay her outstanding earned commissions.

94.     The Company has refused to pay Plaintiff her earned commission.

95.     Defendants have not fully compensated Plaintiff for her earned commissions.

96.     Defendants' actions constitute a breach of contract.

97.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered compensatory and other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for harm suffered as a result of the breach of contract, as follows:

A.      Compensatory damages;

B.      Consequential damages;

C.      Pre-judgment interest and enhancements to off-set negative tax consequences; and

D.      Such other relief as may be available and which the Court deems just and equitable.

### FIFTH COUNT

### UNJUST ENRICHMENT

98.     Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

99.     Throughout her employment with the Company, Plaintiff performed services for Defendants pursuant to terms in her Commission Plan.

100.    Based on these terms, Plaintiff reasonably expected to receive the promised and recited remuneration contained therein, in exchange for the services performed.

101.    Notwithstanding Plaintiff's performance of certain services for Defendants, Defendants failed  and refused to pay Plaintiff earned commissions.

102.    Despite refusing to pay Plaintiff earned commissions, Defendants retained the benefit of those services.

103.    As a result, Defendants have received a windfall and have been unjustly enriched to Plaintiff's expense and detriment.

104.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered compensatory and other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for harm suffered as a result of their unjust enrichment, as follows:

A.    Compensatory damages;

B.    Pre-judgment interest and enhancements to off-set negative tax consequences; and

C.    Such other relief as may be available and which the Court deems just and equitable.

<u>SIXTH COUNT</u>

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

105.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

106.    Plaintiff accepted her employment and performed the duties and responsibilities

of her position in exchange for Defendants' promise to pay her in accordance with the terms and conditions of her agreed upon wages.

107.    In addition to the express terms of the employment agreements and policies concerning earned commissions, implicit in the contracts was a covenant of good faith and fair dealing, or a promise by both parties to perform under the contract in good faith.

108.    Pursuant to the terms of the contracts, Plaintiff was entitled to receive compensation at an established agreed upon rate.

109.    Contrary to the terms of the contracts, Defendants attempted to unilaterally alter her rate of compensation without any prior notice to Plaintiff or her agreement.

110.    By refusing to pay Plaintiff's earned compensation pursuant to the contracts, Defendants have breached the covenant of good faith and fair dealing.

111.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered compensatory and other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for harm suffered as a result of their breach of the covenant of good faith and fair dealing as follows:

A.    Compensatory damages;

B.    Punitive damages;

C.    Pre-judgment interest and enhancements to off-set negative tax consequences; and

D.    Such other relief as may be available and which the Court deems just and equitable.

**CERTIFICATION**

Pursuant to Rule 4:5-1, it is hereby stated to the best of my knowledge and belief that the matter in controversy is not the subject of any other action pending or contemplated in any other court or of a pending arbitration proceeding. Further, Plaintiff is unaware of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts. I further certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

SMITH EIBELER, LLC


By:  */s/ Meghan Chrisner-Keefe*
DATED: March 15, 2023          MEGHAN CHRISNER-KEEFE
                               Attorney for Plaintiff


**JURY DEMAND**

Plaintiff herein demands trial by jury on all issues so triable.

SMITH EIBELER, LLC


By:  */s/ Meghan Chrisner-Keefe*
DATED:  March 15, 2023          MEGHAN CHRISNER-KEEFE
                                Attorney for Plaintiff

## **DESIGNATION OF TRIAL COUNSEL**

Pursuant to <u>R.</u> 4:25-4, Christopher J. Eibeler, Esq. is hereby designated as trial counsel in

this matter.

SMITH EIBELER, LLC


By: *<u>/s/ Meghan Chrisner-Keefe</u>*

DATED:  March 15, 2023                MEGHAN CHRISNER-KEEFE
                                                       Attorney for Plaintiff

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-000823-23**

**Case Caption:** LAWLESS ELISE  VS HASHOFF, LLC

**Case Initiation Date:** 03/15/2023

**Attorney Name:** MEGHAN LYNN CHRISNER-KEEFE

**Firm Name:** SMITH EIBELER LLC

**Address:** 101 CRAWFORDS CORNER RD STE 1-126

HOLMDEL NJ 07733

**Phone:** 7324441300

**Name of Party:** PLAINTIFF : LAWLESS, ELISE

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: ELISE LAWLESS?** NO

---

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/15/2023
Dated

/s/ MEGHAN LYNN CHRISNER-KEEFE
Signed